```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
```

ABDIEL F. AVILA,

        Petitioner,

  v.

THE ATTORNEY GENERAL OF
THE STATE OF NEW JERSEY,
et al.,

        Respondents.

Civil Action
No. 18-9422 (NLH)

**OPINION**

APPEARANCES:

Abdiel F. Avila
788891C
New Jersey State Prison
PO Box 861
Trenton, NJ 08625

    *Petitioner pro se*

Grace C. MacAulay, Camden County Prosecutor
Jason Magid, Assistant Prosecutor
Office of the County Prosecutor
200 Federal Street
Camden, NJ 08103

    *Attorneys for Respondents*

<u>HILLMAN, District Judge</u>

I.    INTRODUCTION

    Abdiel F. Avila, a state prisoner confined in New Jersey State Prison, is proceeding on an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He has also filed a

motion for a "notice of claim of unconstitutionality." ECF No. 65. Respondents oppose the motion. ECF No. 66. For the reasons stated below, the Court will deny the motion.

II. BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the recitation of the facts as set forth by the New Jersey Superior Court Appellate Division ("Appellate Division") in their opinion denying Petitioner's direct appeal:[1]

> C.H. was born in 1992. Her parents divorced when she was one year old. In 2003, when C.H. was eleven years old, her mother married defendant. At that time, C.H. had been living primarily with her grandmother, but spent some time in her mother's home. After her mother's marriage to defendant, C.H. spent more and more time living in her mother's home, to the point where it was about eighty-five percent of the time.
>
> The first inappropriate incident that occurred was not a subject of the indictment. Shortly after her mother and defendant were married, and while C.H. was still eleven years old, defendant invited her into his bedroom to watch television. They were alone in the house at the time. He began to tickle her, and in doing so was touching her chest. C.H. considered this inappropriate, and it made her uncomfortable. She left the room. Defendant told her not to tell her mother about it, saying it would cause her undue stress because she was pregnant. C.H. did not tell anyone about the incident until the time of her disclosure of the subsequent events that became the subject matter of the charges against defendant.

---

[1] The Appellate Division adopted this statement of facts in their opinion affirming the denial of Petitioner's postconviction relief ("PCR") petition. State v. Avila, No. A-2598-14T1, 2016 WL 6804414 (N.J. Super. Ct. App. Div. Nov. 17, 2016) ("Avila II").

2

About two years later, in November 2005, C.H. was in the seventh grade. She was called down to the school office and told that her stepfather was there to pick her up because there was an emergency at home. While they were driving home, defendant said to C.H. "that we were going to f---." Before getting home, they stopped at a store. C.H. went into the store alone, leaving her backpack in the car. She later discovered in her backpack a typewritten letter addressed to her from the "Sisterhood." The letter informed her that she was required to undergo sexual training prior to turning eighteen years old, and part of that training was to have sex with someone older than her. The letter stated that the person in front of her at the time was responsible for her training. The letter made references to people that would appeal to youth, such as popular musical artists, and said that these people had undergone such training.

C.H. read the letter, which was three to four pages long, in defendant's presence. He told C.H. that she had to engage in sexual activities with him, and if she did not, people close to her, such as her mother and her godfather, M.A., "would probably get hurt." Those threats were also contained in the letter.

When they got home, defendant removed all of C.H.'s clothes and removed all of his clothes. He told her to lie on the couch in the living room. She hesitated and began to cry because she did not want to have sex with defendant, but he reiterated that people around her could get hurt if she did not acquiesce. He further told her that he did not want to have sex with her either, but it was an obligation of the Sisterhood.

Initially, C.H. laid on her back, but defendant directed her to roll over onto her stomach. C.H. believed he did this because he did not want to see her crying. Defendant then laid on top of C.H. and penetrated her vagina with his penis, which he continued to do for about fifteen minutes, after which he removed his penis and ejaculated on her lower back. C.H. immediately ran upstairs and took a long shower. She cried and felt disgusted. Defendant then took her back to school and told her they would continue to have sex until she turned

eighteen. Defendant took the Sisterhood letter from C.H. and destroyed it.

This began a course of conduct that persisted on a regular basis over the next eight months. C.H.'s mother regularly left the home at about 7:30 a.m. to go to work, leaving defendant responsible to take C.H. to school at about 8:30 a.m. While alone with C.H. before school, defendant frequently attempted to have sex with her. She always said no and resisted, but she estimated that he succeeded about eighty percent of the time. When she resisted, defendant continually reminded her of the Sisterhood and that her family could be hurt if she did not have sex with him. Defendant repeatedly produced additional letters from the Sisterhood to reinforce C.H.'s obligation to have sex with him. After C.H. read them, defendant always destroyed the letters.

At some point, C.H. began to doubt that the Sisterhood was real, or that anything bad would actually happen to her family if she stopped having sex with defendant. Then, defendant went to Maryland to pick up his daughter from a prior relationship, who was about two years younger than C.H., to bring her back to New Jersey for a visit. C.H. and her stepsister had a close relationship. The stepsister told C.H. that while she and her father were driving to New Jersey, "supposedly someone shot his tire." C.H. did not believe that her stepsister would lie to her. As C.H. described it, her stepsister told her "it was true that the car tire, sound[ed] like somebody shot the tire." Defendant told C.H. that this was the work of the Sisterhood, and "[b]ecause [he] was denied [sex by her] so much that they got mad and they shot his tire." This reinforced C.H.'s belief in the Sisterhood and the prospect that if she refused to have sex with defendant her family members would be harmed. Therefore, she continued to comply with defendant's sexual demands.

In June 2006, C.H., then fourteen years old, completed the seventh grade. She worked over the summer in a store owned by her godfather, M.A., who was the cousin of C.H.'s mother. C.H. had a close relationship with M.A. On June 30, 2006, C.H.'s stepsister was staying with C.H.'s family for a visit. On that morning, C.H.'s mother woke up C.H. and directed her to help defendant with something, after which C.H.'s mother left to go to work.

4

C.H.'s stepsister was sleeping in the bed next to C.H. C.H. immediately turned off the window air conditioning unit in the room, but defendant then came in and turned it back on. He then directed C.H. to the bedroom he shared with C.H.'s mother. C.H.'s baby sister was also asleep elsewhere in the house. Defendant locked the door and demanded sex from C.H.

C.H. became hysterical and violent and began screaming. Apparently no one heard her because of the noise from the air conditioners which were on "high" in both bedrooms. Defendant undressed C.H. and told her to lay on the bed. Initially, C.H. laid on her back, but defendant turned her over onto her stomach, pushing her face into the pillow, apparently to stifle her crying. In the course of this episode, he tried to force C.H. to fellate him (which he had also attempted on other occasions). He also placed his mouth on her genitals. Defendant then proceeded to penetrate C.H.'s vagina with his penis. After a time, he removed his penis and ejaculated on her back. C.H. ran out of the room and took a long shower. She cried in her bedroom before dressing for the day.

Defendant then drove C.H. to M.A.'s store, where C.H. heard a radio program about sexual assault victims who wished they had told someone about their ordeal. C.H. then wrote a note to M.A., which stated:

> I have a secret! That's killing me! Don't tell! I mean no one! I have been touched. By some1 but all I can say I was Blackmailed and I am not a virgin anymore! Well he waz lookin at me kind of funny for a while and this morning when my mom left and my stepsister was sleeping he knocked on my door and he waz like come here so I went and he made me and he said I cant tell cuz some will get hurt. And this is not the first time. I argued while it was happening and waz kissing me and he was cleaning my tears at the same time. I feel like shit rite now. Please don't tell! Pleaes I am not ready to tell! He is Abdiel!

C.H. went into the bathroom in the store and was crying. Another store employee knocked on the door and asked what was the matter. After some delay, C.H. allowed her

5

>co-employee in and told her why she was crying. That employee called M.A. and asked him to come to the store immediately. When he did, C.H. gave him the note, and the two of them cried together.
>
>Other family members were then notified, as were the police and the Division of Youth and Family Services. C.H. gave a statement to the police and cooperated in the investigation. C.H. was taken to the hospital and examined. With the permission of C.H.'s mother, the police searched the home. They seized a comforter that was on the bed in the bedroom shared by defendant and C.H.'s mother. The comforter contained semen, which proved to be from defendant. No fluids or other forensic evidence matching C.H. were found on the comforter.
>
>Defendant did not testify at trial. The defense presented through his attorney was a denial that any of these incidents ever occurred. The defense attacked C.H.'s credibility, emphasizing that she should not be believed because, by her account of the events, she did not disclose their occurrence for many months.

State v. Avila, No. A-5729-08T3, 2011 WL 1466299, at *1-5 (N.J. Super. Ct. App. Div. Apr. 18, 2011) ("Avila I") (alterations and omission in original). He was convicted of two counts of first-degree aggravated sexual assault, N.J.S.A. § 2C:14-2(a)(2)(a), and two counts of second-degree endangering the welfare of a child, N.J.S.A. §2C:24-4(a). The trial court sentenced Petitioner "to an aggregate term of ninety-five years in prison, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2." Avila II, 2016 WL 6804414, at *1.

III. ANALYSIS

Petitioner filed a motion captioned as a "motion of claim of unconstitutionality." ECF No. 65. He asserts "New Jersey

6

statutes N.J.S.A. § 2C:14-1 and § 2C:14-2 are both unconstitutional." Id. at 9.  He asserts his judgment of conviction "was obtained by unconstitutional state statutes" and invokes Local Civil Rule 24.1(b) and 28 U.S.C. § 2403(b).  Id.

Section 2403 states in relevant part:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

28 U.S.C. § 2403(b). Local Civil Rule 24.1(b) implements that statute, stating:

> If, at any time prior to the trial of an action in which neither the State of New Jersey nor any officer, agency or employee thereof is a party, a party to the action questions the constitutionality of any State statute, such party (to enable the Court to comply with 28 U.S.C. § 2403(b)) shall forthwith, upon the filing of any pleading which raises the question, notify the Judge to whom the action is assigned, in writing, of the existence of said question identifying: (1) the title and docket number of the action; (2) the statute challenged; and (3) why it is claimed that the statute is unconstitutional. If memoranda have been served discussing the constitutional question, two copies of each memorandum shall be forwarded with the notification.

Petitioner seeks to challenge the constitutionality of N.J.S.A. § 2C:14-1 and § 2C:14-2 and argues the Court must now notify the

7

State of New Jersey and allow it to intervene in the proceedings.

Section 2403 does not apply to these proceedings. The statute only requires the Court to notify the State of challenges to a state statute's constitutionality "[i]n any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party . . . ." 28 U.S.C. § 2403(b) (emphasis added). The Attorney General of the State of New Jersey is the Respondent in this matter and has designated the Camden County Prosecutor's Office to represent its interests. ECF No. 15. The State is already part of this matter, so § 2403 does not apply. The motion may be denied on that basis alone.

The Court is required to liberally interpret pro se pleadings, so the Court will also consider the motion as a motion to amend the habeas petition. "The Federal Rules of Civil Procedure apply to motions to amend habeas corpus motions." United States v. Duffus, 174 F.3d 333, 336 (3d Cir.), cert. denied, 528 U.S. 866 (1999); see also 28 U.S.C. § 2242. Rule 15(a) provides that a party may amend his pleading once as a matter of course at any time before a responsive pleading is filed. Once a responsive pleading is filed, Petitioner may only amend his pleadings with Respondents' written consent or by

8

leave of court.  Fed. R. Civ. Pro. 15(a)(2).  Respondents do not consent to the amendment.  ECF No. 66.

Petitioner's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a one-year period of limitation on a petitioner seeking to challenge his state conviction and sentence through a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. See 28 U.S.C. § 2244(d)(1).  "This limitations period applies to new petitions 'as well as amendments of existing motions to add new claims or legal theories after the one-year period has expired.'"  Saunders v. D'Illio, No. 15-2683, 2016 WL 4689038, at *2 (D.N.J. Sept. 7, 2016) (quoting Mass v. United States, No. 11-2407, 2014 WL 6611498, at *3 (D.N.J. Nov. 20, 2014)); see also United States v. Thomas, 221 F.3d 430, 431 (3d Cir. 2000).

Petitioner filed this motion after the expiration of AEDPA's one-year statute of limitations.  The New Jersey Supreme Court denied certification on Petitioner's direct appeal on October 13, 2011.  Thus, Petitioner's judgment of conviction became final ninety days after that date, or on January 11, 2012.  After taking statutory tolling into consideration for the time his PCR petition was pending, the statute of limitations to file this federal habeas petition was tolled until March 7, 2017.  Accordingly, Petitioner had until March 7, 2018 to file his federal habeas petition.  See ECF No. 44 at 5-7.  This

9

motion was filed well after that date, and Petitioner's filing of his original federal habeas petition does not toll the applicable one-year statute of limitations. See Duncan v. Walker, 533 U.S. 167, 172 (2001).

Moreover, the challenged revision to N.J.S.A. § 2C:14-2 was enacted on January 21, 2020. See Sex Offenses—Assault And Battery, 2019 NJ Sess. Law Serv. Ch. 474 (ASSEMBLY 2767). Petitioner filed this motion more than one year later. As the motion itself is untimely under § 2244, the new grounds for relief must relate back to the original petition in order not to be time-barred under AEDPA.

"Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence.'" Mayle v. Felix, 545 U.S. 644, 655 (2005) (alteration in original) (quoting Fed. R. Civ. Pro. 15(c)). In Mayle, the Supreme Court rejected the argument that an amendment to a habeas petition relates back to the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence. Under that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." Id. at 656-57.

10

The Court held that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." Id. at 659.

Petitioner seeks to challenge the constitutionality of N.J.S.A. § 2C:14-1 and § 2C:14-2 based on amendments to the statute after his conviction: "Eleven years after my conviction dated June 25, 2009 . . . is 'when' the language of the statute is amended by the N.J. Legislature for the first time to say: '[a]ggravated sexual assault is a crime for the first degree ex[c]ept, as otherwise provided in subsection d. of this section, a person convicted under paragraph (1) of this subsection shall be sentenced to a specific term of years which shall be fixed by the court and shall be between 25 years and life imprisonment . . . .'" ECF No. 65 at 19 (emphasis in original).  "The need to reform is presented . . . to provide retroactive relief to Petitioner and all 'similarly situated' adult inmate convictions 'prior' to the effective date of January 21, 2020." Id. (emphasis in original). He also argues "the age distinctions of 'under the age of twelve' and 'sixteen,' the definition of 'child', definition of 'juvenile,' the definition of 'consent' that formerly was a defense to rape under all under § 2A:138-1 where all excluded in the current definitions of 2C:14-1, as well as other comprehensive definitions of 'adult' and others." Id. at 23.

11

Petitioner did not make this argument in his amended petition.  ECF No. 10 at 50-86.  Petitioner does challenge the validity of his sentence, but his argument is that "the sentencing court ignored to follow the requirements of N.J.S.A. 2C:14-6."  Id. at 59.  That statute concerns the sentencing of a "person who is convicted of a second or subsequent offense under sections 2C:14-2 or 2C:14-3a," and states that "the sentence imposed under those sections for the second or subsequent offense shall, unless the person is sentenced pursuant to the provisions of 2C:43-7, include a fixed minimum sentence of not less than 5 years during which the defendant shall not be eligible for parole."  N.J.S.A. § 2C:14-6.  "[T]he sentencing court on 6/25/2009 illegally imposed a sentence on counts 1 and 3 sentences which stem from constitutional error in violation to Petitioner's 5th, 6th, and 14th Amendment rights of the U.S. Constitution, which stem from a nexus that the Indictment has never been signed by either the prosecutor nor endorsed as a 'true bill' by any foreperson."  ECF No. 10 at 59.  This is not the same argument that Petitioner makes in his motion.

In his response papers, Petitioner asserts he raised this on direct appeal, specifically that his Thirteenth and Fourteenth amendment rights were violated "when the state legislature encroached and failed to define the 'man' in any of the statutes adjudicated the constitionality of the statutes

12

are challengued [sic], are vague and have a broad definition to a 'person' which failed to include the 'man' that is currently imprisoned constituting international human rights violation." ECF No. 67 at 7.  He argues that this claim was incorporated into his amended petition via Ground IV, which reads "ineffective assistance of trial counsel, defendant incorporates by reference all arguments advanced on plenary, supplemental, and reply briefs on direct appeal docket no. a-5729-08t4 . . . ."  ECF No. 10 at 64.  This fails for two reasons.

    First, the claim as raised in the amended habeas petition is an ineffective assistance of counsel claim.  Petitioner states that he wants to adopt his prior arguments "to 'show that there is a reasonable probability that, but for counsel's unprofessional [sic] errors, the result of the proceeding would have been different.'"  Id. (quoting Strickland v. Washington, 466 U.S. 668, 696 (1984)).  "[A]ll arguments advanced on plenary, supplemental, and reply briefs on direct appeal docket No. A-5729-08T4 hereby consolidated . . . to show the multiple cummulative [sic] errors in nature attributed to trial counsel Andre Duclair's ineffective assistance of counsel . . . ."  Id.  When asked if this claim had been exhausted on direct appeal, Petitioner responded "no" and explained this was because "[i]neffective assistance of counsel claims are best raised during collateral proceedings."  Id. at 65-66.  It is clear from

13

the "facts in support" that this is a cumulative error ineffective assistance of counsel claim, not a substantive challenge to the constitutionality of state statutes.  Proposed amendments that "seek to add a new claim or to insert a new theory into the case" do not relate back.  <u>United States v. Thomas</u>, 221 F.3d 430, 431 (3d Cir. 2000).

Second, the Court previously rejected Petitioner's attempt to rely on vague incorporations of prior arguments into his habeas proceedings, specifically informing Petitioner that "it is not incumbent on the Court to search through Petitioner's various filings in order to determine what arguments he wishes the Court to review.  The Habeas rules require Petitioner to clearly state his arguments to the Court in the manner set forth on the Clerk's form."  ECF No. 7 at 2 (citing 28 U.S.C. § 2254 Rule 2).  The Court warned Petitioner that he could not rely on other filings and instructed Petitioner to "fill out the form with all of the claims he wishes the Court to consider.  Each claim is to be listed out individually along with its supporting facts. . . . If a claim is not on the new form, the Court will not review it."  <u>Id.</u>  Despite this instruction, Petitioner did not include the "constitutionality of the statutes" claim in his amended petition; therefore, it is not before the Court as part of Ground IV.

14

Petitioner's "constitutionality of the statutes" claim was raised after the AEDPA statute of limitations expired, and it does not relate back under Federal Rule of Civil Procedure 17(c).  Therefore, the Court will deny the motion.

IV.  CONCLUSION

For the reasons stated above, the Court will deny Petitioner's motion.  An accompanying Order will be entered.


 March 29, 2023                      s/ Noel L. Hillman
Date                                NOEL L. HILLMAN
                                    U.S. District Judge

15